U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
**F I L E D**
May 14, 2007
Clerk, U.S. Bankruptcy Court

**Below is an Order of the Court.**

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case<br>) No. 06-33607-rld13 |
| Timothy Joseph Mullen and<br>Amie Marie Mullen, | )<br>)<br>) MEMORANDUM OPINION |
| Debtors. | ) |

Debtors, Timothy Joseph Mullen and Amie Marie Mullen ("the Mullens"), filed their voluntary petition for relief under chapter 13 of the Bankruptcy Code[1] on November 16, 2006 ("Petition Date"), at which time the Mullens filed their chapter 13 plan, also dated November 16, 2006 ("Plan"). On March 8, 2007, I conducted a final hearing ("Hearing") on the objections of the chapter 13 trustee ("Trustee") to confirmation of the Plan ("Confirmation Objections"). At the conclusion of the

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (Pub. L. 109-8, April 20, 2005, 119 Stat. 23).

Page 1 -    MEMORANDUM OPINION

Hearing, I sustained the Confirmation Objections and advised the parties that I would state my findings of facts and conclusions of law separately in a written decision. This Memorandum Opinion constitutes those findings of facts and conclusions of law, which I make pursuant to Fed. R. Civ. P. 52(a), applicable in this contested matter pursuant to Fed. R. Bankr. P. 9014. I have core jurisdiction to resolve plan confirmation issues pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and 157(b)(2)(L).

## Background

The Mullens concede that their gross income in the six months prior to the Petition Date exceeded the Oregon median income for their household size. They also concede in their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") that the "applicable commitment period" therefore is five years, and they assert that their "disposable income" is to be determined by subtracting from their gross income "the amounts mandated by § 1325(b)(3)." Further, the Mullens point out that they both are in "career" positions, such that their levels of income will be stable throughout the case. The Mullens' Schedules I and J reflect that they have $396.00 net monthly income to contribute to their Plan, and in fact the Mullens commit to pay $396.00 into the Plan each month for the Plan duration. The Mullens take the position, however, that because their "monthly disposable income" reflected on line 58 of Form B22C is $103.13, payment of $6,187.80 ($103.13 x 60) satisfies the payment requirements under § 1325(b). Accordingly, they add to the standard

Page 2 - MEMORANDUM OPINION

chapter 13 form plan in use in this district a provision which states that they are entitled to their discharge and to have the case closed upon (1) payment of all administrative and priority debts, and (2) payment of $6,187.80 to general unsecured creditors. This provision anticipates that the foregoing conditions to discharge will be satisfied prior to month 60, in approximately month 25 according to the Trustee.

The Trustee objects, asserting that the "applicable commitment period" set forth in §§ 1325(b)(1)(B) and (b)(4) requires that plan payments be made for a full 5 years. The Trustee further asserts that the "current monthly income" set forth on the Mullens' Form B22C does not accurately reflect their disposable income, which should include any tax refunds that the Mullens receive during the "applicable commitment period." Finally, the Trustee contends that in calculating "projected disposable income," § 1325(b)(3) should apply such that standard expenses as set forth in IRS guidelines will be used.

## Discussion

As relevant to the matter before me, § 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
> . . .
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Because the Trustee has objected to confirmation of the Plan, § 1325(b)(1)(B) precludes confirmation unless I find that the plan provides that all of the Mullens' "projected disposable income" to be

Page 3 - MEMORANDUM OPINION

received during the "applicable commitment period" will be applied to make payments to unsecured creditors under the Plan. In determining whether to confirm the Plan, I must decide the following issues. First, I must decide whether the "applicable commitment period" requires that the Mullens actually make payments under a plan for a period of five years or sixty calendar months. Second, I must decide if the proposed Plan commits all of the Mullens' "projected disposable income," to Plan payments during the "applicable commitment period." In determining "projected disposable income," I must address a subset of at least two issues: whether "projected disposable income" is effectively synonymous with "disposable income;" and whether the Mullens must commit, as part of their "projected disposable income," payment of their tax refunds to the Plan for the "applicable commitment period."

## Applicable Commitment Period

As noted above, the first issue I must decide in determining whether I can confirm the Plan is whether the "applicable commitment period" provisions of the Bankruptcy Code mandate that payments be made for a full five years.

Section 1325(b)(4), as relevant to the case before me, provides:

> For purposes of this subsection, the 'applicable commitment period' –
> (A) subject to subparagraph (B), shall be --
> . . .
>   (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than --
>   . . .
>     (II) in the case of a debtor in a household of 2, 3, or 4

Page 4 - MEMORANDUM OPINION

    individuals, the highest median family income of the
    applicable State for a family of the same number or fewer
    individuals
    . . .
(B) may be less than 3 or 5 years, whichever is applicable under
  subparagraph (A), but only if the plan provides for payment in
  full of all allowed unsecured claims over a shorter period.

    Because the Mullens are above-median income debtors, the Trustee asserts that in accordance with § 1325(b)(4)(A), the Plan cannot be confirmed unless the Mullens make plan payments over a period of time that is not less than five years. The Mullens assert that "applicable commitment period" is not a temporal requirement. Instead, it mandates the <u>amount</u> to be paid to unsecured creditors under the Plan. Accordingly, the Mullens contend that so long as they pay into their plan an amount that provides their unsecured creditors with their "disposable income" each month, multiplied by 60 in order to capture the amount of "disposable income" they are "projected" to receive over the next five years, they satisfy the "applicable commitment period" requirement. In the Mullens' view, the fact that they might pay the total amount they owe under the Plan on an accelerated basis is irrelevant.

    The same issue was before the court in <u>In re McGuire</u>, 342 B.R. 608, 615 (Bankr. W.D. Mo. 2006):

> Phrased succinctly, the question is whether ["applicable commitment period"] is a multiplier rather than a time period, i.e., whether it is a "monetary" or a "temporal" requirement.

    The problem with the Mullens' position is that it is inconsistent with the provisions of BAPCPA. I agree with the analysis of the court in <u>In re Schanuth</u>, 342 B.R. 601, 607 (Bankr. W.D. Mo. 2006), that the plain language of § 1325(b)(4)(B) supports a temporal interpretation of the phrase "applicable commitment period." Section

Page 5 - MEMORANDUM OPINION

1325(b)(4)(B) expressly articulates the conditions under which the Plan may be _less_ than five years. Specifically, § 1325(b)(4)(B) authorizes confirmation of a plan with a shorter payment period than five years only if the plan provides for payment in full of all allowed unsecured claims over the shorter period. Here, the Plan does not provide for payment in full of all allowed unsecured claims.

In light of the express temporal limit recognized in § 1325(b)(4)(B), I join those courts which have accepted that "applicable commitment period" is a temporal concept. Most of these courts base their holdings on the plain meaning of the term "applicable commitment period" because interpreting "applicable commitment period" as a temporal concept is not patently absurd. For example, the court in In re Slusher, 2007 WL 118009 at *8 (Bankr. D. Nev. 2007), stated:

> . . . '[P]lain meaning' is indeed the tool that must be used to analyze the statute. . . . The code provides no specific definition of the words "applicable," "commitment," or "period." However, the dictionary gives the following definitions: Applicable: fit or suitable for its purpose; appropriate. Commitment: the committing of oneself . . . (to a particular course of conduct). Period: a length of time. Taken together in the context of the Bankruptcy Code, "applicable commitment period" thus stands for the appropriate length of time during which the debtor has agreed to make payments.

See also, e.g., In re Girodes, 350 B.R. 31, 35 (Bankr. M.D.N.C. 2006)("The use of the term 'period' implies time period rather than amount."); In re Alexander, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006)("If Congress wanted the 'applicable commitment period' to function as a multiplier it could have so stated."); In re Dew, 344 B.R. 655, 661-62 (Bankr. N.D. Ala. 2006)("It is impossible to read sections 1322(d)(2), 1325(b)(4)(A) and 1329(c) and conclude the Bankruptcy Code contemplates

Page 6 - MEMORANDUM OPINION

something other than a defined length of time for payments to be made under a chapter 13 plan, i.e. the applicable commitment period." ); In re McGuire, 342 B.R. at 615 ("[A] monetary interpretation of ['applicable commitment period'] renders § 1325(b)(4)(B) meaningless."); In re Schanuth, 342 B.R. at 607 ("The term itself, 'applicable commitment period,' contains a word with temporal meaning: 'period' means 'chronological division.'"); In re Beasley, 342 B.R. 280, 284 (Bankr. C.D. Ill. 2006) ("[T]he statutory formulas and Form B22C do lead to a fully-dispositive calculation of the applicable commitment period. When the calculation is complete, a debtor is directed to a three-year or five-year commitment period, and no further analysis is suggested, required, or allowed by any portion of the relevant statutes. If Congress had desired to build flexibility into the determination of the applicable commitment period, it could have done so.").

Further, as stated by the court in In re Davis, 348 B.R. 449, 457 (Bankr. E.D. Mich. 2006):

> What little legislative history does exist strongly suggests that Congress intended the applicable commitment period to impose a minimum length of a plan, not a multiplicand as Debtor asserts, as the following House report shows:
>
> Sec. 318. Chapter 13 Plans to Have a Five-Year Duration in Certain Cases. Paragraph (1) of § 318 of the Act amends Bankruptcy Code §§ 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. . . . The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3) and (4) make conforming amendments to §§ 1325(b) and 1329(c) of the Code.

I find unpersuasive the reasoning of the limited authorities

Page 7 - MEMORANDUM OPINION

which have rejected the interpretation of "applicable commitment period" as a strictly temporal concept. See, e.g., In re Fuger, 347 B.R. 94, 99 (Bankr. D. Utah 2006) ("[T]he term 'applicable commitment period' is both a monetary and a temporal provision. It is monetary in the sense that it has always required debtors to commit to pay unsecured creditors a set return. It is temporal in the sense that it has always required debtors to determine that return by projecting over a specific time period, and it provides debtors with a time limit for performing under a chapter 13 plan."). See also, KEITH M. LUNDIN, Chapter 13 Bankruptcy § 500.1, p. 500-2 (3d ed. Bankruptcy Press 2000 & Supp. 2006):

> Under § 1325(b)(1), the applicable commitment period is a number of years that is multiplied by annualized disposable income to determine the amount of projected disposable income that must be paid to unsecured creditors to satisfy the confirmation test in § 1325(b)(1). The applicable commitment period does not require that the debtor actually make payments for any particular period of time. Rather, it is the multiplier in a formula that determines the *amount* of disposable income that must be paid to unsecured creditors.

Because the Mullens are above-median income debtors, the "applicable commitment period" in their chapter 13 case is five years. Paragraph 12 of the Plan provides:

> Debtors are entitled to a discharge and closing of this case once all administrative and priority debts are paid and general unsecured creditors have received a total of $6,187.80 (Debtors' projected disposable income ($103.13 X 60)).

In addition, the Mullens have not competed the blank in Paragraph 8 of the form Plan to state that the length of the Plan is 60 months. Since Paragraph 12 is inconsistent with the required "applicable commitment period" of five years in this case, I find that the Trustee's objection is well taken, and I will sustain the Trustee's objection on the

Page 8 - MEMORANDUM OPINION

"applicable commitment period" ground.

## Projected Disposable Income

Pre-BAPCPA, "projected disposable income" was interpreted by statute and case law to be, in effect, "income not reasonably necessary for maintaining or supporting the debtor or a dependent, with that determination being made on an estimated basis at plan confirmation." In re Slusher, 2007 WL 118009 at *2 (Bankr. D. Nev. 2007). In the absence of statutory definition or specification, what constituted a "reasonably necessary" expense for purposes of calculating disposable income, was determined on a case-by-case basis. See id. In most cases, disposable income was determined by subtracting the debtor's monthly expenses, as set forth on Schedule J, from the monthly income stated on the debtor's Schedule I.

In enacting BAPCPA, Congress revised the § 1325(b)(2) definition of disposable income and created § 1325(b)(3) to provide guidelines for reasonably necessary expenses. For below-median income debtors, "projected disposable income" still "is based on a debtor's crrent income and expenses as reflected on Schedules I and J." In re Kibbe, 342 B.R. 411, 415 (Bankr. D.N.H. 2006). At issue in this case, involving above-median income debtors, is to what extent the BAPCPA changes limit the court's discretion in determining the Mullens' "projected disposable income" to be paid into the Plan.

///

///

///

Page 9 - MEMORANDUM OPINION

1. <u>"Projected Disposable Income" Is Not Synonymous With "Disposable Income"</u>

The meaning of "projected disposable income" under BAPCPA has been the subject of numerous court decisions since BAPCPA's relatively recent effective date. With limited exceptions, the courts confronted with interpreting the meaning of "projected disposable income" under BAPCPA have held that it is not unambiguous, thereby giving rise to the application of general canons of statutory construction, going beyond "plain meaning." In applying these canons, most courts have held that the terms "disposable income," as defined by § 1325(b)(2), and "projected disposable income," as used in § 1325(b)(1)(B), are not necessarily synonymous. <u>In re Slusher</u>, 2007 WL 118009 (Bankr. D. Nev. 2007).

To hold otherwise renders the word "projected" surplusage, as used not only in § 1325(b)(1)(B), but also in §§ 1222(a)(4), 1225(b)(1)(B), 1225(b)(1)(C), and 1322(a)(4).

For a debtor not engaged in business, § 1325(b)(2) provides:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended –
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>    (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made . . . ..

Since "disposable income" is defined in BAPCPA while "projected" and "projected disposable income" are not, the courts are left to

Page 10 - MEMORANDUM OPINION

determine how the word "projected" modifies or changes "disposable income."

Generally speaking, "disposable income" for BAPCPA purposes is the calculation, based upon a six-months average of historical current monthly income (see § 101(10A)) and uniform expense data, which is used primarily to determine whether a chapter 7 case is an "abuse." Adding "projected" to the phrase transforms it to a forward-looking concept. See Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 357 n.5 (9th Cir. 1994). While Anderson interprets "projected" disposable income pre-BAPCPA, its analysis regarding "projected" as a modifier of disposable income remains valid.[2]

In reaching this conclusion, several courts have noted that, in enacting BAPCPA, Congress chose not to define "projected disposable income," despite the body of case law, including Anderson, which addressed the distinction between "projected disposable income" and "disposable income" in the pre-BAPCPA versions of section 1325(b)(1)(B) and section 1325(b)(2). In re Jass, 340 B.R. 411, 417 (Bankr. D. Utah 2006) ("Congress changed the definition of 'disposable income' under § 1325(b)(2), replacing it with a specific and detailed definition. Despite these detailed changes, Congress

---

[2] Before the BAPCPA effective date, "projected disposable income" usually was calculated by multiplying the difference between Schedule I income and Schedule J expenses by the estimated length of the Plan, consistent with the requirement of § 1322(a)(1) that the debtor commit "such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Neither the term "projected disposable income" in § 1325(b)(1)(B) nor the commitment of future income requirement of § 1322(a)(1) was amended by BAPCPA.

Page 11 - MEMORANDUM OPINION

did not remove the word 'projected' from § 1325(b)(1)(B), nor did it add the word 'projected' to the term 'disposable income' carefully defined by § 1325(b)(2). The Court can only conclude that the available evidence of Congressional intent underlying § 1325(b) bolsters its holding that the number resulting from Form B22C is not always a debtor's 'projected disposable income.'"); In re Slusher, 2007 WL 118009 at *4 ("Because the operative language in Section 1325(b)(1)(B) did not change – the statute referred and refers to 'projected disposable income' both before and after BAPCPA – Anderson provides the presumptive answer for the proper construction of the term."); see also BFP v. Resolution Trust Corp., 511 U.S. 531, 537 (1994) ("Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.").

In interpreting the meaning of "projected disposable income," courts have looked for clues in other provisions of the Bankruptcy Code and in considering the overall framework and interlocking operation of provisions of the Bankruptcy Code. For instance, the court in In re Hardacre, 338 B.R. 718, 722-23 (Bankr. N.D. Tex. 2006), determined that the language "to be received" and "as of the effective date of the plan" in § 1325(b)(1) necessitated a conclusion that "projected disposable income" "must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." See also In re Grady, 343 B.R. 747, 752 (Bankr. N.D. Ga. 2006):

Considering that the Bankruptcy Code permits a debtor to

Page 12 - MEMORANDUM OPINION

> modify the confirmed plan if his financial condition changes, it appears Congress, by using the term "projected disposable income" in section 1325(b)(1)(B), intended courts to consider a debtor's disposable income at the time of confirmation. . . . If the Debtors are required to pay the disposable income as calculated on [Form B22C] only, they would not be able to modify the plan under section 1329(a).

The latter point made in Grady is particularly compelling because § 1329 provides that "the debtor, the trustee, or the holder of an allowed unsecured claim" may propose a plan modification "at any time after confirmation of the plan." If the measure of the debtor's required commitment of "projected disposable income" to plan payments is a mere multiple of the historical calculation of "disposable income" under §§ 1325(b)(2) and (3), what principled basis is there for allowing a debtor to modify a plan to reduce plan payments based on a postpetition reduction in debtor's income? Likewise, what basis is there to approve a plan modification proposed by the trustee or an unsecured creditor based on an increase in the debtor's income, no matter how great, at any time from the petition date forward during the pendency of the chapter 13 case? The Mullens' interpretation of "projected disposable income" would effectively read § 1329 out of the Bankruptcy Code in many of its applications.

However, in In re Kagenveama, 2006 Bankr. LEXIS 2729 (Bankr. D. Ariz. 2006), the court rejected the conclusion of the majority of courts, which have decided that "projected disposable income" in § 1325(b)(1)(B) is not effectively synonymous with "disposable income" in § 1325(b)(2).

The difficulty is that such an interpretation flies in the face

Page 13 - MEMORANDUM OPINION

> of the plain words of the statute. Care was taken by Congress to modify the old definition of disposable income and to replace it with one based upon "current monthly income." This is clear; there can be no doubt about it. *Section 1325(b)(2)* states what the definition of "disposable income" is "for the purposes of this subsection"; nowhere else, other than in *Section 1325(b)(1)(B)*, do the words "disposable income" appear in the referenced subsection. Unless the definition applies to "projected disposable income," it has no meaning.

Kagenveama at *5 (italics in original). The Kagenveama court conceded that the pre-BAPCPA reliance on Schedules I and J would yield "a more reality-based number" for projected disposable income in the case before it, recognizing implicitly that the application of the plain meaning in that instance leads to an absurd result:

> However, Congress has chosen not to rely on I and J, notwithstanding their proven utility, and that is Congress' choice to make. But this case illustrates the problems caused by this approach. Debtor's Schedules I and J yield "disposable income" of $1,523.89; however, "disposable income" as shown on Debtor's B22C form is a -$4.04. Given the stated purposes of BAPCPA, it is both ironic and unfortunate that this Debtor with resources available to pay unsecured creditors will not be required to do so in this case.

Kagenveama at *6-7.

Similarly, the court in In re Alexander, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) also used a "plain meaning" interpretation of §§ 1325(b)(1)(B) and 1325(b)(2) and held that "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." In reaching its conclusion, the Alexander court reasoned:

> Both "projected disposable income" and "disposable income" fall under subsection (b) of § 1325. First, (b)(1) states that projected disposable income is to be applied toward unsecured creditors under the plan. Then (b)(2) states "For purposes of this subsection, the term 'disposable income' means . . . ." [citation omitted]. If "disposable income" is not linked to "projected disposable income" then it is just a floating

Page 14 - MEMORANDUM OPINION

definition with no apparent purpose.

Id.

The result in Kagenveama clearly demonstrates the problem with interpreting the term "projected disposable income" as a mere multiple of "disposable income." Chapter 13 is not some alternative universe where reality dare not intrude. Further,

> It makes little sense for Congress to include in the Bankruptcy Code the flexibility provided by §§ 1323 and 1329 permitting modification of a plan when a debtor's financial circumstances change, thus assisting both debtors in completing their plans when their circumstances change for the worse and creditors in obtaining increased payments when a debtor's circumstances improve, but not to provide for a realistic determination of the debtor's ability to make payments in the first place.

In re Zimmerman, 2007 WL 295452 (Bankr. N.D. Ohio 2007).

2.     The Calculation of Projected Disposable Income

The majority view appears to be that the current monthly income on Form B22C creates a presumption of a debtor's projected disposable income. See, e.g., In re Foster, 2006 WL 2621080 (Bankr. N.D. Ind. 2006); In re Risher, 344 B.R. 833, 836 (Bankr. W.D. Ky. 2006); In re Grady, 343 B.R. at 753; In re McGuire, 342 B.R. at 615; In re Jass, 340 B.R. at 416.

I adopt the position of those courts which have held that the number from line 58 of Form B22C, incorporated into the "disposable income" definition in § 1325(b)(2), generally is presumptive of "projected disposable income," as consistent with the language of BAPCPA in § 1325(b) and congressional intent.

However, in this case, there is evidence submitted by the

Page 15 - MEMORANDUM OPINION

Mullens themselves, to rebut the presumption that the Form B22C calculation of "disposable income" should be the measure of "projected disposable income": The Mullens are in stable employment situations and do not project that their future incomes will vary materially. The Mullens proposed as their periodic payment during the life of their Plan $396 a month, which equals the difference between their Schedule I income and their Schedule J expenses. Frankly I find it disingenuous of the Mullens to argue that their "disposable income" for chapter 13 plan confirmation purposes is $103.13 per month, while proposing the Plan with a fixed monthly payment of $396.00 for the life of the Plan. I, therefore, hold that the presumption that the Mullens' "disposable income," as calculated on their Form B22C, should be used to calculate their "projected disposable income" has been overcome by the evidence of the larger periodic payment the Mullens proposed and agreed to pay into the Plan.[3]  See e.g., In re Zirtzman, 2006 WL 3000103 at *4 (Bankr. N.D. Iowa 2006) ("[B]ecause Debtors and Trustee agree that Debtors have monthly net income of $300 to pay into the plan, this amount is their projected disposable income under § 1325(b)(1)(B)."). This holding provides a further basis to sustain the Trustee's objection to confirmation of the Plan.

---

[3] While the proposed payment, coincidentally or not, is the disposable income number derived from subtracting the Mullens' Schedule J expenses from Schedule I income, for purposes of this decision, I need not reach the issue of whether Schedule J ever can or should be used as the basis for the expense component of "projected disposable income" in an above-median income debtor BAPCPA case. I decide only that the periodic Plan payment proposed by the Mullens rebuts the presumption that the Form B22C number provides the definitive basis for calculating the Mullens' "projected disposable income."

Page 16 - MEMORANDUM OPINION

3. <u>Tax Refunds are a Component of "Projected Disposable Income" During the "Applicable Commitment Period"</u>

I previously held in a pre-BAPCPA case that pre- and post-petition tax refunds represented future income or future earnings which constituted projected disposable income that debtors were required to pay into their plans pursuant to § 1322(a)(1) and § 1325(b)(1)(B). <u>In re Schiffman</u>, 338 B.R. 422 (Bankr. D. Or. 2006). I hold now that <u>Schiffman</u> remains applicable under BAPCPA. See <u>In re Balcerowski</u>, 353 B.R. 581 (Bankr. E.D. Wisc. 2006); <u>In re Risher</u>, 344 B.R. 833, 837 (Bankr. W.D. Ky. 2006):

> Debtors herein contend that one of the categories of expenses that they are allowed to deduct under 11 U.S.C. § 702(b)(2)(A)(ii), is federal, state and local taxes, referencing question 30 on Form B22C. Actually, this section references a deduction for the federal, state and local taxes actually paid. Trustee is correct that taxes actually paid are not equivalent to what is withheld from a debtor's paycheck for taxes. Tax refunds represent amounts overwithheld and thus, constitute additional income. Debtors' argument that the taxes are already captured in the disposable income calculations is misplaced.

This conclusion is based on the reality that in most instances, a debtor who receives a substantial tax refund has overwithheld tax payments from income. Such overwithholding reduces disposable income that otherwise would be available for plan payments if the related refunds are not paid into the plan. The Mullens did not provide any evidence that they were not and would not be overwithholding taxes during the term of the Plan.

### Conclusion

Under BAPCPA, for above-median income debtors, the "applicable commitment period" requires a stream of payments for a term of five years

Page 17 - MEMORANDUM OPINION

(60 months), unless the allowed claims of unsecured creditors are paid in full prior to the end of the "applicable commitment period." The presumption that the debtors' "disposable income" determines their "projected disposable income" can be overcome by contrary evidence, as submitted in this case. Finally, tax refunds which debtors receive during the pendency of their case are a component of their "projected disposable income," unless the debtors present sufficient controverting evidence.

As stated at the Hearing, I will enter an order denying confirmation of the Plan, and allowing the Mullens 28 days within which to file a modified plan.

###

cc:  Rex K. Daines
     Brian D. Lynch, Trustee

Page 18 - MEMORANDUM OPINION